Good morning. May it please the Court, Eric Hurston, attorney for Petitioner Michael Payton. There are three issues presented in this appeal. They all address a single search warrant. One has to do with probable cause for the search warrant. The second has to do whether there were Franks violations resulting from material misrepresentations. And the third has to do with the scope of the warrant. Since the probable cause issues and Franks are related, I will start with the scope of the warrant. The appliant in this case filled out an affidavit which requested permission to search any computers that might be present in Mr. Payton's residence for evidence of drug sales. However, in the warrant itself, it sought permission to search only the items listed in Attachment A. Attachment A was properly incorporated into the warrant. However, a request to search computers is not included in Attachment A. Does it include evidence of drug sales in Attachment A? What does it say about that? It says drug ledgers, payo sheets and drug ledgers are included in Attachment A, but no reference to computers. Basically, the probable cause in this case consists that there's boilerplate recitations of what drug dealers do, but the only information indicating any drug sales is occurring is basically the fact that the that was contained in two small plastic baggies inside a slightly larger bag that was pinned to the inside of her bra. There was also a glass pipe for smoking methamphetamine. However, there was no indicia of drug sales. But in addition to those two items, the client also advised the court that there had been complaints from neighbors of drug sales at the address. However, that was an entirely bare bones allegation. There was no information which made it possible to determine whether the purported neighbor was identified or anonymous. There was no information concerning when these purported sales took place. There was absolutely no veracity information, no basis of knowledge, no details that could be corroborated by the police, no corroboration. It was just the bare bones statement that complaints by neighbors of sales of drugs at that residence. Well, doesn't the fact that Melinda Fuentes, the day before, is found with this amount of methamphetamine, doesn't that really give the requisite probable cause to search the residence? Well, the issue isn't the search of the residence for drugs or contraband. The issue is whether there's probable cause to search the computer for evidence of drug sales. We're not contesting that based on Ms. Fuentes' possession of methamphetamine, there may have been probable cause to search the residence for contraband, but there is absolutely no evidence of sales. She had a pipe for personal use. While she denied the request for a search of the residence, the officers did do a walk-through of the residence for safety. They observed no indication of sales. There were no large quantities of drugs. There were no specific allegations that any sales had ever occurred. There were no indication of people coming and going. Again, it was just the factual basis for the warrant was truly, you know, that the officer was of the opinion that the two-and-a-half grams of methamphetamine was possessed for sales based on the quantity, the way it was packaged, and complaints from neighbors of sales at that address. That was the entirety of it. And, again, there's no information to provide veracity for the complaint, no information concerning the basis of knowledge, just that bare-bones allegation. It could have been years before. It could have been a situation where we don't know what it was. We don't know what it was because there's just no information in the four corners of the affidavit. And I think the real problem is to bootstrap that into a search of a computer for evidence of sales. Again, if someone is arrested in a residence, a child or a guest with two-and-a-half grams of methamphetamine, under this warrant that would essentially authorize the search of any computer in the residence for evidence of drug sales because, again, there's nothing in the affidavit that shows any indication of drug sales other than the bare-bones allegation that neighbors had complained of drug sales. So as to the warrant that was actually issued, and you already did the search with me on the scope of the warrant, how do you distinguish United States versus Giberson, which was cited in the government's 28-J letter? Right, and I also addressed Giberson in my response. I think in Giberson the fact was that they were searching for the case-involved allegations of fraudulent identity documents. When they executed the search warrant, they saw documents that appeared to be fraudulent identity documents in the vicinity of the computer raising an inference that they'd been created on the computer. And based on that, the searching officers merely seized the computer and requested a warrant to conduct a search of the computer. Here the situation is different. There's the bare-bones allegations, complaints by neighbors of drug sales, but there was absolutely no evidence of drug sales in the residence. There was no quantities of, you know, large quantities of cash, no payo sheets, no scales, no nothing. There was no indication of sales other than the bare-bones allegation. And I think what we would have as a situation, I don't think Giberson should be read so broadly to create a container, essentially a container exception that would allow any computer to be searched in any residence when there's any possibility that the information sought in the warrant might be found on a computer. I don't think I've ever seen a warrant for a residence that didn't request indicia of residency, and I think that's something that could be found on a computer. I don't think that Giberson should be read that broadly. I think that there needs to be some reason to believe that evidence may be on the computer, and I don't think that that existed in this case. So in Giberson, it arose during the course of the search. They found documents they believed had actually been printed using the computer, and they believed they would find that evidence there, and lo and behold, they found child pornography, I guess. Here, they intended from the outset to search the computer. Well, but the officers didn't even know whether a computer was in the residence. The officer had never found any evidence of drug sales on a computer. The officer had no specific reason to believe there would be evidence of drug sales on this computer. He testified at a hearing that he had been an officer for approximately seven years when this warrant was issued. Neither he nor any officer he worked with had ever discovered evidence of drug sales on a computer. However, shortly before offering this warrant, he attended a training where they advised him that drug dealers may keep evidence of drug sales on the computers so you should ask to search a computer any time you offer a drug warrant. That was the only reason that it was included here. But again, the officer actually had no information to indicate. He had no knowledge whether there was even a computer in the residence. It was basically a phishing expedition. So he gave ñ he put in his affidavit he wanted to search the computer. The magistrate judge testifies that he thought the warrant or intended the warrant to include the search of the computer, but it plainly did not. Correct. And I think that the problem here is I think it's a bad policy to have magistrates coming in more than two years after the fact to testify regarding their subjective intent in an effort to cure deficiencies in a warrant. There was no indication that the judge indicated to the client in any way that the search of the computers was authorized. It was a very short warrant. The officer provided it to the judge. He read it, signed it, and handed it back. This isn't a case like Shepard or Heard where the court affirmatively indicated that the search requested by the officers was approved. He just signed it. And after the fact, he said that, yes, I intended to authorize the search of the computers, but he never indicated to the officer in any way that the search of computers was authorized. We have no idea that that occurred until he testified more than two years later. And I think in regards ñ I would also like to go to the Franks issue. I think there's a very important Franks issue here. The officers claimed that there were reports of drug sales by neighbors was false. It was crystal clear that there were no complaints of drug sales by neighbors. Rather, a neighbor who was upset about the amount of traffic complained to the officers that she thought drugs were being used at the residence, that there was a large amount of traffic, and that she didn't like the type of traffic that it was. She videotaped this, showed it to officers. The officers or the affiant interpreted the amount of traffic and the appearance that people might be using drugs outside the residence as indicative of drug sales. But he never, you know, claimed that any neighbor had complained of actual drug sales. He never complained that other officers had advised him that drug sales had occurred. Rather, he interpreted the fact that there were, you know, a large amount of traffic and possible drug use. He interpreted that and gave his opinion to the magistrate that that constituted a complaint of drug sales. But if you exercise the drug sales, isn't the probable cause still sufficient for the warrant? I don't believe so. When you exercise the drug sales, what you have is an individual possessed 2 1⁄2 grams of methamphetamine packaged in two small baggies inside a slightly larger baggie with a pipe used for consuming methamphetamine. The officer testified that he believed it was possessed for sales, in this case, based on other information that he had, but none of that other information was included in the warrant. He also testified that 2 1⁄2 grams is a quantity that's also consistent with personal use. And in regards to the packaging, there's no indication that these, you know, again, it's just two packages. It's not 10 or 15 or 20. It's just two packages. There's no indication that these packages were types of packages that are normally sold or in quantities that were normally sold. It was just two small baggies inside a slightly larger baggie. Well, even if it's small and even if it's for personal use that we know, at the same time where there's a little smoke, there may be some fire. And it takes two to tango. You've got to have a cellar in order to have a user. Well, I don't think that's – but there's no indication that the cellar is at that residence. The person with the methamphetamine who was the daughter of a roommate of Mr. Payton, she was arrested on misdemeanor warrant, and the small quantity of methamphetamine was found in her possession at that time. But it was just pure, simple possession. There was no indication that she had sold any methamphetamine or offered to sell or had purchased. They just arrested her on a misdemeanor warrant and discovered the small quantity in her possession. Well, I guess the question is whether if she's leaving the residence, she got it there. In other words, whether it was sold to her or what. She resided at the residence at the time. She was preparing to move. That wasn't included in the affidavit, but she was at the residence, and they went to the residence because they had information that she was residing there temporarily. But it wasn't a situation where she was coming and going. She was actually residing at the residence at the time. And, again, the possession of the small quantity of methamphetamine may be sufficient to search the residence for drugs or contraband, but I don't think you get to the point that that's sufficient to search a computer for evidence of drug sales. I mean, if that's the standard, virtually any time a person is arrested with a quantity of a controlled substance in a residence, every computer in that residence would be subject to search if the officer opines that it was possessed for drug sales. Because, again, there's no supporting evidence that shows that there was drug sales. There's no indication that any sales had actually occurred there. No, you know, again, no indication that there were large quantities of drugs. No indication that there were suspected drug dealers residing at the house. It's just the bare-bones complaint that neighbors had complained of drug sales, and that was, in fact, a false complaint. That didn't actually occur. What is Mr. Payton's custodial status? His release date is in March of 2010. And I would like to reserve the remaining time, please. Thank you. May it please the Court. I'm Cheryl Carvalho, representing the United States in this case for the Eastern District of California. I'd first like to respond to Judge Mills, your question regarding whether Attachment A included information regarding drug sales. And, in fact, it does. It inadvertently omitted a reference to computers, which was clearly intended by Judge Kirikara. It really doesn't matter what's intended, does it? I mean, the warrants, the warrant. I mean the ---- Well, Your Honor, in the warrant, Attachment A, which defense counsel does concede that Attachment A was properly incorporated into the warrant itself, and in Attachment A, references made to sales ledgers showing narcotics transactions, such as payo sheets, et cetera, talks about items used for weighing methamphetamine and packaging methamphetamine, clearly consistent with drug sales. And that's on the ---- clearly incorporated into the warrant itself. In addition, I think it's significant that all of these documents on a state warrant were presented together. You have the face sheet with the warrant and the ---- The warrant is, as Judge Canvey says, the warrant is what the officers are required to give to the person whose residence is being searched. It's the thing that people need to identify what items the police may search. And it serves a really important purpose in doing that. So we really have to look at the four corners of the warrant. There's nothing in there that says anything about a computer. Well, Your Honor, I think given the face sheet at Supplemental Excerpt Record 2 on page 14, the affiant swears under oath that the facts presented in this search warrant and affidavit and incorporated statement of probable cause. And it's clear that the statement of probable cause does include a request to search computers as part as the evidence of drug transaction. It includes a request, but that request may not have been granted. Well, Your Honor, it's very clear in this case, since the State court judge did testify, that is what he intended. Oh, he meant to grant it. Yeah. He meant to. Yes. See, the person reading the warrant that's just been handed, as Judge Wardlaw says, sees, well, they requested, they wanted to search computers, but the warrant doesn't authorize them to search computers. Well, Your Honor, I think in this case, since the affiant is also the officer executing the warrant, that certainly minimizes any chance that anything was searched for that wasn't authorized and clearly intended to be authorized, but for the inadvertent error. Well, okay. I won't repeat myself. So what was Mr. Payton actually convicted of? Child pornography. Possession. Possession of child pornography. All right. He was not convicted of anything related to drugs. Not in Federal court, Your Honor. Well, I'm wondering what is the nature of the conviction that was supported by the evidence that was taken off the computer? That's purely child pornography? Yes, Your Honor. It was child pornography. And I think it's significant in that respect, Your Honor, that once child pornography was located by the officer executing the search warrant, he stopped the search, which was very reasonable, and obtained a subsequent warrant for child pornography. All right. Okay. So then he got that warrant, but there were no Federal drug charges brought? No Federal drug charges brought, no, Your Honor. However, against Ms. Fuentes, she was charged with possession for sale, which again I think is significant because that's based on the 2.7 grams of methamphetamine as well as the packaging in two baggies inside of a larger baggie. So that all shows, I think, drug sales. And certainly supports the probable cause for the search of drug sales, even without the statement that I think clearly does get included, but without the statement that the neighbors complained of drug sales in the area. The district court judge did hold a Franks hearing, that in fact there were no material intended misstatements. Is it your position that if the search was for evidence of drug sales, they can search the computer without the need of any further indication that drug sale information would be on the computer? Yes. I think under Giberson that. Under what? Giberson, I believe is the name of the. Giberson. Giberson that the government cited in its 28-J letter. Yeah. I think that supports the government's position that even where, as in this case, search of the computer was inadvertently left out of attachment A, that given that attachment A did include, with particularity, sales ledgers showing narcotics transactions, such as payo sheets, that one would expect could be found on a computer, as well as financial records of persons in control of the residence. I think based on those items in particular, it would be appropriate to search the computer. And in this case, certainly there was, even if the court were to find errors with this warrant, as clearly there was in leaving out computers off attachment A, I think the good faith exception clearly applies here. Your argument expands the scope of every single warrant that includes documents or things that could be printed out of a computer, from a warrant that doesn't mention the computer to any time you have a warrant that seeks any documents that could be printed off a computer, the police may also search the computer. Do you see what I'm saying? Because Giberson doesn't go all the way there, and expressly says we are confining our holding to these facts, and there they went to the computer desk, and the exact things they were looking for, which were fabricated photo identification cards and similar papers, were sitting right next to the computer, and they had the warrant that authorized the search for those papers that looked like they were printed off the computer. And so they stepped to the computer, and our court did say in this particular fact circumstance we'll allow the search of the computer. But what you're arguing for is something really much broader, and I'm wondering if it's not really a dangerous precedent that takes us beyond our Fourth Amendment precedents. Your Honor, I would agree that the Giberson case is not dispositive in this case. I think the government's stronger argument has to do with the fact that this is a state warrant. Clearly all of the documents were presented together and intended by the state court judge to include a search of computers. In addition, it's a technical defect that I think the U.S. v. Towne case of this court is quite helpful in this area, where I would argue, number one, that the affidavit in this case, Statement of Probable Cause, is incorporated by reference and can be looked at to deal with the omission of computers from Attachment A. And alternatively, under Govey-Grudy, which is out of the Third Circuit, even if this court were to find that the affidavit was not incorporated by reference specifically to Attachment A, it still states that the affidavit can be used to cure the search warrant. But Govey-Grudy said that you couldn't search two women in the house that were not named in the search warrant. Govey-Grudy goes exactly the opposite of what you're arguing for. Your Honor, I don't believe it does in this case where there's an inadvertent omission. And it's inconsistent by omitting, failing to include computers, whereas it clearly was intended in the Statement of Probable Cause. And in addition, under State law, California State law, under People v. Moore, the fact that the affiant was in charge of executing the search warrant ensured that the search warrant was limited to that authorized by the magistrate as far as the officer was aware and, as the magistrate testified, he intended. And that where the as that case, People v. Moore, a California case, it seems subtle that the mere fact that there is on the face of a warrant some error or omission is not sufficient to defeat the validity of the warrant. And I think of significance in the U.S. v. Town case from the circuit, when the officer who requests authorization for the search and the magistrate grants authorization, the magistrate grants the authorization and the officers executing the search expressly rely on a given set of papers, as they did in this case, that they identify that set of papers and that set of words as proof that the proper precautions were taken to prevent an unreasonably invasive search. And I really think that's what we have in this case, is clearly the intent was to include all of the documents. They were all together. They were, in our view, incorporated, the affidavit was incorporated by reference into the search warrant and accompanied the search warrant to the search. There was testimony to that effect as well. So I think that the requirements were met in this case. What is the record clear on just what the agent saw in the computer that caused him to see the child pornography? Yes, Your Honor. Well, I guess the question is, what did he click on to bring that picture up? My understanding, Your Honor, it was a file that was readily available on the computer    when you clicked on it. Well, of course it was. I just wondered what caused him to open it. Because, Your Honor, he thought he was authorized to search the computer. Okay. So he could have opened any file on the computer. Well, he was specifically looking for evidence of drug sales, Your Honor. I don't know the specific name of the file that he clicked on to. Often, though, it's certainly the case that information is included in files that don't necessarily seem to have the appropriate name for that file. Well, it could be considered that. So. And unless the Court has any other questions on any of the issues raised, the government would submit and request that this Court affirm the conviction in this case. Thank you. Thank you. Thank you, counsel. United States. Do you have? Your Honor, just very briefly, I wanted to clarify one issue. The allegation that regarding the complaints of neighbors of drug sales, the government has never asserted at any level in this proceeding that there was an actual complaint of drug sales or that the affliant mistakenly believed there was a complaint of drug sales. Rather, what they've argued is that the complaint of suspected drug use and a large number of people coming and going, based on that, it was the affliant's opinion that it was consistent with drug sales. And the government's position is that that justified the officer in advising the magistrate that there was a complaint of drug sales, even though there was no actual complaint of drug sales and there was no, you know, allegation that the officer mistakenly believed there was an actual complaint of drug sales. And also, there was no indicia of drug sales discovered in the residence during the search. What the agent should have done is say there is complaint of drug use and people frequently coming and going, and in my experience as an agent, I think that's indication of safety. Right. And we believe that would have been perfectly appropriate and the judge could have decided whether that was enough. But essentially, the affliant cut the judge out of the equation in this case. Thank you very much, counsel. Thank you, Your Honor. All right. United States v. Payton is submitted.
judges: Canby, Wardlaw, Mills